Filed 10/26/22  P. v. Wilson CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JOSEPH ALLEN WILSON,<br><br>    Defendant and Appellant. | F083416<br><br>(Super. Ct. No. 95CM1143)<br><br>**OPINION** |

THE COURT*

APPEAL from a judgment of the Superior Court of Kings County.  Valerie R. Chrissakis, Judge.

Benjamin Owens, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Robert C. Nash, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

*        Before Levy, Acting P. J., Detjen, J. and Peña, J.

## INTRODUCTION

Petitioner Joseph Allen Wilson petitioned the superior court, pursuant to former section 1170.95 (now § 1172.6) of the Penal Code,[1] for resentencing on his conviction for first degree murder. The superior court denied the petition at the prima facie stage without appointing counsel or holding a hearing. Based on the factual background as stated in our opinion in petitioner's direct appeal (see *People v. Wilson* (Feb. 4, 1998, F025854) [nonpub. opn.] (*Wilson*)), the court determined petitioner aided and abetted in the murder with intent to kill, a disqualifying factor pursuant to sections 1172.6, subdivision (a)(3) and 189, subdivision (e)(2).

On appeal, petitioner argues the superior court prejudicially erred in denying the petition without appointing counsel, issuing an order to show cause, or holding an evidentiary hearing. We agree the court erred in denying the petition without appointing counsel. However, we conclude the error was harmless because the jury's special circumstance finding establishes petitioner aided and abetted in the murder with intent to kill. (§ 190.2, subd. (a)(10).) Accordingly, petitioner is ineligible for resentencing as a matter of law and the petition was properly denied at the prima facie stage.

## FACTUAL BACKGROUND

We previously summarized the facts underlying petitioner's offenses as follows.[2]

---

[1] Undesignated statutory references are to the Penal Code. Former section 1170.95 recently was renumbered section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10.) We will refer to the current section 1172.6 in this opinion.

[2] We grant petitioner's May 2, 2022 request for judicial notice of this court's opinion, volume VI of the reporter's transcript, and volumes VIII and IX of the clerk's transcript from petitioner's direct appeal.

We refer to the factual background to provide context for the trial court's ruling, but we do not rely on our prior opinion in resolving the issues presented in this appeal. (See § 1172.6, subd. (d)(3).)

"On the morning of February 15, 1994, Kings County Sheriff's deputies discovered the body of Susan Morales[3] in her home; the department had been asked to do a 'check the welfare call' at Morales's residence. She was apparently attacked first in her dining room area, where she was forced underneath a table and received multiple head wounds; there was a large pool of blood found in and around the table and carpet. She then somehow made it to the bathroom, where either she or someone else tried to place toilet paper on her scalp lacerations. From there, she went to the master bedroom, where her attacker inflicted two lethal blows to her head with a dining room chair, fracturing her skull. Evidence suggested Morales was killed the evening of February 12th.

"It appeared someone had gone through the victim's purse; its contents were strewn about the kitchen floor. The house had not been ransacked, however, though a few items were apparently missing. There were no signs of forced entry. In the opinion of one detective, this had not been a random burglary that went awry.

"[Petitioner] and Morales had been romantically involved with one another in the fall of 1993. Then, in mid-December, [petitioner] and Morales quarreled and she 'kicked' [petitioner] out of her house. She threw [petitioner]'s things, including clothing and tools, onto the front lawn. Later that day, [petitioner] suggested to an acquaintance that the two go to Morales's house. Drunk and angry, [petitioner] said 'Let's go do Suzie.' The acquaintance interpreted [petitioner]'s remark to mean he planned to 'either beat her up or something else [violent] to her.' The acquaintance refused to be involved.

"Sometime later, [petitioner] went to Morales's house and took a VCR and a cable box. Morales yelled at [petitioner] as he left with the property. Immediately thereafter, [petitioner] went to another residence where he traded the VCR for narcotics.

"On February 9, 1994, a Kings County deputy sheriff arrested [petitioner] on a burglary charge initiated by Morales and based upon the taking of the VCR. Following his arrest, [petitioner] claimed he had returned the property.

"From his jail cell, [petitioner] made several telephone calls in which he expressed his anger towards Morales and complained bitterly about her

---

**3** The victim's first name is spelled Susan in the opinion but is spelled Suzanne in the information and in the superior court's order denying the petition.

actions in pressing charges against him. Morales also apparently had a book detailing [petitioner]'s drug connections and purportedly had threatened to surrender it to the police. [Petitioner] was not only worried about the possible release of the book but also about the time he could serve for the burglary.

"[Petitioner] telephoned his cousin and asked him to contact certain people who could get the book from Morales and persuade her to drop the burglary charge. The cousin never made the contact. [Petitioner] was also overheard to angrily say on the telephone: 'Fuck you, bitch, drop the charges;' '[I]f I was out there I would go ahead and kill you;' and 'I'll have somebody else kill you, somebody else.' Fellow cellmates also overheard [petitioner] on the telephone say, in an angry voice, 'tell the bitch to drop the charges' and that he wanted the charges dropped 'by any means.' Furthermore, [petitioner] told one cellmate that he was '[g]oing to have the bitch killed if she did not drop the charges' and that he would ' "have that bitch killed, whatever it took." ' In a similar vein, [petitioner] told a jail trustee that his ([petitioner]'s) father could have Morales ' "did up" ' or killed so she would be unable to testify against him in court.

"Though police interviewed [petitioner] soon after the discovery of Morales's body, no charges were filed against him at that time. In late February, the burglary case was dismissed.

"During the summer of 1994, at a family gathering, [petitioner] was asked whether he had anything to do with Morales's death. He smirked but did not verbally answer the question. At a later point in 1994, he confided to a new girlfriend that his uncle and his close friend Larry Hartwell had killed Morales.

"In 1995, [petitioner] was again incarcerated in the Kings County Jail. He was housed in the same cell as Terry [P.], the trustee with whom he had spoken in February 1994. Over time, [petitioner] admitted he arranged through his father to have his uncle kill Morales so that she would not be able to testify against him on the burglary charge. [Petitioner] also did not want the book describing his drug connections to be discovered.

"[Petitioner] went so far as to write a letter of instructions describing how he wanted Morales killed. He wanted the killer 'to bust her in the head.' This way he would know that the hired killer 'did it.' [Petitioner] did not want Morales killed with a gun because the houses in her neighborhood were so close together that the neighbors would hear a gunshot and the killer would not have enough time to leave town. He also wanted the killer to take a few things in order to simulate a robbery.

4.

[Petitioner] gave his letter to an inmate scheduled to be released and asked that it be mailed at the nearest mailbox.

"[Petitioner] also discussed some details of the murder with [Terry]. He described how his uncle, who was already known to Morales, just knocked on her door and she let him in. In addition, [petitioner] said the killer hit Morales over the head with something from the house and threw Morales's body on the bed, where detectives later found her." (*Wilson*, *supra*, F025854, fns. omitted.)

## PROCEDURAL HISTORY

On February 26, 1996, a jury found petitioner guilty of first degree murder (§ 187, subd. (a); count I) and dissuading a witness (§ 136.1, subd. (c)(1); count II). As to count I, the jury found true the special circumstance that the murder victim was a witness to a crime and was intentionally killed for the purpose of preventing her from testifying (§ 190.2, subd. (a)(10)). Petitioner was sentenced on count I to a term of life without the possibility of parole. Sentence on count II was imposed and stayed (§ 654). On appeal, we affirmed. (*Wilson*, *supra*, F025854.)

On July 5, 2019, petitioner, in propria persona, filed a petition for resentencing pursuant to section 1172.6. On August 14, 2019, he filed a corrected petition.[4] Both petitions requested the appointment of counsel.

On August 27, 2019, the People opposed the petition. The People referred to the statement of facts from this court's opinion in petitioner's direct appeal and argued the facts showed that petitioner was a direct aider and abettor in the murder and acted with implied malice.

On November 1, 2019, petitioner again requested the appointment of counsel.

On June 3, 2020, the superior court denied the petition in a written order, without appointing counsel or holding a hearing. The court stated it had reviewed the court file,

---

[4] In the first petition, petitioner erroneously checked a box stating that he was convicted of second degree murder under the natural and probable consequences doctrine or a felony-murder theory.

as well as this court's opinion in petitioner's direct appeal, and concluded petitioner failed to state a prima facie case for relief. Specifically, the court stated:

> "While incarcerated at Kings County Jail for burglary against the victim (Ms. Suzanne Morales), [p]etitioner made multiple statements to cellmates that he or someone else would kill her if she did not drop the charges. Petitioner was overheard making similar statements on telephone calls. One inmate witness heard [p]etitioner state the following on a phone call, 'I'll have somebody else kill you, somebody else.' After the victim was found dead, [p]etitioner told his current girlfriend and a friend that [p]etitioner's uncle, Mr. Larry Hartwell, killed the victim. Petitioner had drafted a letter containing instructions for Mr. Hartwell describing how he wanted the victim killed. Petitioner wanted her head busted open so he would know the hired killer did it. In the letter, [p]etitioner advised against use of a gun because the neighbors would hear the noise. The victim sustained blunt force trauma to her skull. Petitioner subsequently told another cellmate he arranged to have his uncle kill the victim. Petitioner knew that the victim was hit in the head with an object. He also knew the location in the home where her body was located.

> "Based on the record, [p]etitioner, with an intent to kill, aided and abetted Mr. Hartwell to kill the victim. He prepared instructions and made multiple admissions about arranging the killing to prevent the victim from testifying against him. [Citation.] Senate Bill [No.] 1437 does not change the legality of his conviction."

Petitioner then filed a motion to reconsider or modify his restitution fine based on his inability to pay. The court denied the motion.

Petitioner submitted another petition for resentencing pursuant to section 1172.6, which was dated March 26, 2021. On April 27, 2021, the petition was returned to petitioner without having been filed on the ground his prior petition was denied on June 3, 2020.

On June 7, 2021, petitioner filed an untimely notice of appeal. We subsequently granted petitioner leave to file a belated notice of appeal within 60 days, and issued a writ of mandamus directing the superior court clerk to treat such notice of appeal as timely filed. (*In re Wilson* (Sept. 24, 2021, F083030) [nonpub. opn.].)

6.

This appeal followed.

## DISCUSSION

**I.      Applicable Law**

Effective January 1, 2019, the Legislature passed Senate Bill No. 1437 (2017-2018 Reg. Sess.) "to amend the felony murder rule and the natural and probable consequences doctrine . . . to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).)  The bill accomplished this task by adding three separate provisions to the Penal Code.  (*People v. Gentile* (2020) 10 Cal.5th 830, 842 (*Gentile*).) First, to amend the natural and probable consequences doctrine, the bill added section 188, subdivision (a)(3), which requires a principal to act with malice aforethought before he or she may be convicted of murder.  (§ 188, subd. (a)(3); accord, *Gentile*, at pp. 842-843.)  Second, to amend the felony-murder rule, the bill added section 189, subdivision (e):

> "A participant in the perpetration or attempted perpetration of [qualifying felonies] in which a death occurs is liable for murder only if one of the following is proven:  [¶]  (1) The person was the actual killer.  [¶]  (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.  [¶]  (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."[5]  (§ 189, subd. (e); accord, *Gentile*, at p. 842.)

Finally, the bill added former section 1170.95, now section 1172.6, to provide a procedure for those convicted of a qualifying offense "to seek relief under the two ameliorative provisions above."  (*Gentile*, at p. 843.)  This procedure is available to

_____

[5] Additionally, section 189 was amended to allow for felony-murder liability where the victim is a peace officer.  (§ 189, subd. (f); accord, *People v. Daniel* (2020) 57 Cal.App.5th 666, 672.)

7.

persons convicted of "felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter." (§ 1172.6, subd. (a).)

"Section [1172.6] lays out a process" for a person convicted of one of the aforementioned offenses "to seek vacatur of his or her conviction and resentencing." (*Gentile*, *supra*, 10 Cal.5th at p. 853.) First, an offender must file a petition in the sentencing court averring that:

> "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine[;]
>
> "(2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder[; and]
>
> "(3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a)(1)-(3); see § 1172.6, subd. (b)(1)(A); accord, *People v. Lewis* (2021) 11 Cal.5th 952, 959-960 (*Lewis*).)

Additionally, the petition shall state "[w]hether the petitioner requests the appointment of counsel." (§ 1172.6, subd. (b)(1)(C).)

If a petition fails to contain the required information and the information cannot be "readily ascertained" by the court, the petition may be denied without prejudice to the filing of another petition. (§ 1172.6, subd. (b)(2).) Otherwise, counsel must be appointed, if requested. (§ 1172.6, subd. (b)(3).) The prosecutor must file a response and the petitioner may file a reply. The trial court must then hold a hearing to determine if the petitioner has made a prima facie showing that he or she is entitled to relief.

8.

(§ 1172.6, subd. (c); accord, *Lewis*, *supra*, 11 Cal.5th at pp. 961-963, 967.)  In making this determination, the court may rely on the record of conviction.  (*Lewis*, at pp. 970-971.)  However, the prima facie inquiry is limited and, at this stage of the proceedings, the court "should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' "  (*Id*. at p. 972.)

If the court determines the petitioner has met his or her prima facie burden, "the trial court must issue an order to show cause and hold a hearing to determine whether to vacate the murder[, attempted murder, or manslaughter] conviction and to resentence the petitioner on any remaining counts."  (*Gentile*, *supra*, 10 Cal.5th at p. 853; accord, § 1172.6, subds. (c), (d)(1).)  At the hearing, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder . . . under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019."  (§ 1172.6, subd. (d)(3).)

To demonstrate prejudice from the denial of a section 1172.6 petition before the issuance of an order to show cause, the petitioner must show it is reasonably probable that, absent error, his or her petition would not have been summarily denied without an evidentiary hearing.  (*Lewis*, *supra*, 11 Cal.5th at pp. 972-974; see *People v. Watson* (1956) 46 Cal.2d 818, 836.)

## II.    Appointment of Counsel

Petitioner contends, and the People concede, the trial court erred in failing to appoint counsel.

At the time the trial court ruled on the petition, our Supreme Court had not resolved whether section 1172.6 requires the appointment of counsel or further briefing immediately upon the filing of a facially sufficient petition.  (See *Lewis*, *supra*, 11 Cal.5th at pp. 961-967.)  However, our Supreme Court and Legislature have since clarified that counsel must be appointed if requested, and briefing must proceed, so long as the petition complies with the requirements of section 1172.6, subdivision (b)(1)

9.

and (2).  (§ 1172.6, subd. (b)(3); accord, *Lewis*, at pp. 962-963, 967.)  Here, the People do not suggest the petition failed to meet the requirements of section 1172.6, subdivision (b).  Accordingly, appointment of counsel and a full opportunity for briefing were required by section 1172.6, subdivisions (b)(3) and (c).  (See *Lewis*, *supra*, 11 Cal.5th at pp. 961-963, 967.)  The court erred in disposing of the petition without following these procedures.

## III.    Prejudice

Because the trial court erred in failing to appoint counsel, we may affirm only if petitioner was not prejudiced by the error.  (*Lewis*, *supra*, 11 Cal.5th at pp. 972-974.)  As we explain, we conclude petitioner was not prejudiced because the jury's special circumstance finding establishes he is ineligible for resentencing as a matter of law.

Pursuant to section 1172.6, a petitioner is ineligible for resentencing if he or she was the actual killer, aided and abetted in the murder with intent to kill, or was a major participant in the underlying felony who acted with reckless indifference to human life. (§§ 189, subd. (e), 1172.6, subd. (a)(3); see *Gentile*, *supra*, 10 Cal.5th at p. 842.)  Here, the jury found true a special circumstance pursuant to section 190.2, subdivision (a)(10), which imposes a sentence of death or life without the possibility of parole for a murder where "[t]he victim was a witness to a crime who was intentionally killed for the purpose of preventing his or her testimony in any criminal or juvenile proceeding."  To find the special circumstance true, the jury was required to find either that petitioner (1) was the actual killer and intended to kill the victim, or (2) aided and abetted in the commission of first degree murder with the intent to kill.  (§ 190.2, subds. (a)(10), (b), (c); accord, *People v. Fayed* (2020) 9 Cal.5th 147, 201-202 [considering murder for financial-gain special circumstance pursuant to § 190.2, subd. (a)(1)].)  The true finding on the special circumstance therefore establishes the jury made the findings necessary to sustain the murder conviction under the law as amended by Senate Bill No. 1437 (2017-2018 Reg. Sess.).  Petitioner is ineligible for resentencing as a matter of law.  (See *People v. Strong*

(2022) 13 Cal.5th 698, 710, 715 (*Strong*) [special circumstance findings requiring proof of intent to kill are ordinarily dispositive of resentencing eligibility].)

Nonetheless, petitioner relies on *People v. Pacheco* (2022) 76 Cal.App.5th 118, review granted May 18, 2022, S274102 (*Pacheco*), to argue the special circumstance finding does not establish the jury convicted him as a direct aider and abettor, and therefore does not establish his ineligibility for resentencing as a matter of law. In *Pacheco*, the Court of Appeal determined the jury's true finding on a gang special circumstance did not establish the petitioner's liability for murder as a direct aider and abettor. (*Pacheco*, at p. 128.) The court noted the special circumstance instruction required the jury to find the perpetrator intentionally killed the victim and " '[t]he defendant had an intent to kill at the time of the killing.' " (*Id.* at pp. 127-128, italics omitted.) Based on this instruction, the court held the special circumstance finding established the petitioner "intended to kill [the victim] at the time of his killing (the mens rea). But the gang [special] circumstance instruction does not establish—as a matter of law—that [the petitioner] directly aided and abetted the killing of [the victim] (the actus reus)." (*Id.* at p. 128, italics omitted.) Furthermore, the special circumstance finding did not constitute a finding that the petitioner did anything to " 'aid, facilitate, promote, encourage, or instigate' the target crime of murder," as opposed to aiding and abetting a different target crime, such as disturbing the peace. (*Ibid.*)

Here, section 190.2 required the jury to find that petitioner either (1) was the actual killer and intended to kill the victim, or (2) aided and abetted in the commission of first degree murder with the intent to kill. (§ 190.2, subds. (a)(10), (b), (c).) Our Supreme Court has suggested that such findings are ordinarily dispositive and not "open to reexamination and relitigation in a section 1172.6 proceeding." (*Strong*, *supra*, 13 Cal.5th at p. 715.) Nonetheless, we acknowledge the high court has granted review in *Pacheco* and deferred further action pending disposition in *People v. Curiel* (S272238), which involves a question of whether a jury finding on a gang-related special

circumstance (§ 190.2, subd. (a)(22)) precludes a defendant from making a prima facie showing of resentencing eligibility under section 1172.6.

Even if we assume that *Pacheco* is correct, and that a section 1172.6 petitioner may relitigate whether an ambiguous jury instruction permitted a jury to find the special circumstance true without finding all essential elements to have been proved beyond a reasonable doubt, petitioner remains ineligible for relief. Here, the jury was instructed, in relevant part, as follows: "[If you find beyond a reasonable doubt that [petitioner] was an aider and abettor, then you must also find beyond a reasonable doubt that [petitioner] with intent to kill [aided [and abetted]] an actor in commission of the murder in the first degree, in order to find the special circumstance to be true.]" Thus, unlike in *Pacheco*, the special circumstance finding establishes the jury found petitioner directly aided and abetted in the commission of murder in the first degree.

On that basis, petitioner is ineligible for resentencing as a matter of law. He therefore was not prejudiced by the court's summary denial of his petition prior to the appointment of counsel. (*Lewis*, *supra*, 11 Cal.5th at pp. 972-974.)

## DISPOSITION

The order is affirmed.